Good morning, Counsel. Good morning, Your Honor. I'm Alan Harris on behalf of the plaintiff in the State of California for its civil penalties on account of a PAGA violation. The District Court misconstrued Section 226A of the California Labor Code and denied the State of California its PAGA civil penalties and denied the Costco employees their damages on account of the violation. For PAGA civil penalties, there's no need to show either injury or a knowing and intentional violation of Section 226A. Maybe I can ask you, I have what I think is the disputed statement in front of me, and am I right that the vacation float for salary not exempt paid at overtime rate line? And also, Your Honor, the line at the bottom, which says total, next, next, which is improperly designated, I think, as earnings. Okay, so maybe I could talk about the vacation line first. Yes. And is it a violation? How does that line violate 226A? Well, the line itself, Your Honor, doesn't violate 226. What violates 226 is, first of all, there is a requirement that all applicable hourly rates be shown on the wage statement along with the number of hours. And as the court found in the findings of fact, and I'm quoting from the findings of by this pay stub, you wouldn't be able to determine the hourly rate because it has a blend right in the line of vacation hours that are paid in straight pay. Wait, wait, wait. Vacation hours are not paid. Yes, Your Honor. Until you take a vacation. If you don't take a vacation, it's not part of your payment. Correct. Yes, Your Honor. What we're talking about, Your Honor, are the wage statements which include the terms float over time and vacation pay. 226A, subparagraph 2, requires the hourly rates. All applicable hourly rates. And subsection 9 requires all the hours worked. Right? Correct, Your Honor. And 226E says that if a reasonable person can deduce the information which should be put on the statement from no other source than the statement itself, that's compliance. Correct. Correct. Now, indulge me. Does a reasonable person working in California, is it, is he charged under our public school system with knowledge of the mathematical process of division? Yes, Your Honor. Right. So if you have a certain amount of pay and a certain amount of hours, if you divide the hours into the pay, does that not tell you the rate? No, Your Honor, because with respect to the line of work. Answer me the question as I asked. I'm sorry. If I take regular pay, 54, 64 hours. Yes, that gives you the information. And then take the amount of dollars, right? And divide 64 hours into $1,772. That tells me the rate of pay. I agree and that's not a violation. That's correct. And then as to the overtime, same thing happens. Except for the float overtime, Your Honor. Well, then as to the float overtime, as I understand, and correct me if I'm wrong, Mr. Harris, because you know this case much better than I do. As far as the float overtime, that is a benefit which is given to managers as, so that when they do take a vacation or they want to take a day off, they will get paid their regular amount. Isn't that right? I believe. So that if for some reason a manager leaves the position, leaves work, or has an accident and can't work, or dies, right? The float overtime never gets paid. Well, it would get paid because it would be due, if you died, you know, it would be due under the statute that accrued vacation time would be paid. But if you left employment, it would not be paid? If you left employment, it's also required to be paid the accrued time. As a part of the continuing wage? Well, you have to pay it upon termination or that triggers the continuing wage. I see. So that, but as to the compliance with subsection 2 and subsection 9, this statement is sufficient, is it right? No, your honor. Why? If I could explain why. Ms. Kearney was the 30B6 witness for Costco who testified on this issue and she is the In her deposition, she admitted, and it's in the findings of fact, which is at excerpts of the record, page 8, lines 20 to 23, that by the pay stub you cannot determine the hourly rate because it is a blend. And she also admitted and found by the court in the, that in order to determine the total hours worked, you have to go to information outside the wage statement to know what float over time does not mean hours worked. It is another kind of compensation. This, this So that's, that actually is my question. If the statute requires total hours worked and vacation time and float over time, neither one of them are actually hours worked. How does that violate the statute? Well, you need the total hours worked. That is nowhere found on the wage statement. And if you add together everything that's in that column, you come to a total that includes hours worked and float over time, which is not hours worked. Similarly, the statute is violated. So it actually overstates the hours worked. It overstates the hours worked and it's a violation. Similarly, there's a violation because you have to all applicable hourly rates on the wage statement and you don't have all applicable hourly rates. But hourly, it's hourly rates for work. No, it's all applicable hourly rates are required to be in the statute. And so you don't have the applicable hourly rates shown with respect to the vacation and float over time. You have a combined rate as the court found. The court agreed with us that there is a violation of 226A2 and 9. What the court said was that we didn't prove it was knowing and knowing and intentional. Okay, so tell us about that. Isn't there a split of authority as to what knowing and intentional means? Yes, Your Honor, but there's no split of authority with respect to whether or not you have to have knowing and intentional as a component of the violation. So with respect to the civil penalties, knowing and intentional isn't required. With respect to the split of authority, I think the overwhelming majority is found in the McKenzie case and cases like that, which state that for knowing and intentional, all you have to do is look at the wage statement and see it. And if I'm referring to the Novova case at 100F sub 3rd, 1013, a 2015 case, that states the relevant inquiry is whether the employer is aware of the factual predicate underlying the violation, whether the employer knew that the wage statement did not provide the total hours worked. It's not whether the employer had a good faith belief that it complied with the law. But the district court seemed to go with a good faith belief. Right, but there was no testimony. There was no evidence that Costco had a good faith belief that these statements complied with the law. In fact, the evidence is to the contrary, because we have two prior class actions against Costco dealing with other violations of Randall case, another one that settled for $7.5 million, the Doty case, they've previously paid out $22.5 million. And how they can, there's just no evidence at all that they had a good faith belief, or that there was any reason to have a good faith belief that these wage statements showed either the total hours worked as opposed to the total hours for which you're being paid. And they've actually changed the wage statement since then. Then, then, Ms. Apodaca brought the lawsuit by another firm, we came in later, and she was fired, having brought the lawsuit. And Ms. Carney, in her 30b-6 deposition, admitted that they changed the wage statement based on this lawsuit. And, and so, in this case, we have a misunderstanding in the district court, that for PAGA civil penalties, you have to show that the violation is knowing and intentional. Now, the California legislature changed the law, didn't they? Not on that, what I think Your Honor is referring to is not a change in the law, but a clarification of the law. We're referring, I think, Your Honor, to the, whether or not the element is, is, needs to be... Well, you don't think that they changed the law because that they, they were aware of this, of this split of authority? No, Your Honor, this is, this was a split of authority that's addressed in the Kindred case, which quotes, it's in our brief, and it quotes the legislative history on the law change. And the Senate bill analysis that is quoted in the Kindred case states, or the case states, quote, the Senate bill analysis indicates that because of the, quote, contradictory and inconsistent interpretations of what constitutes suffering injury in the various court cases, it is necessary to provide, to provide further clarity on the issue, not to change the law. According to the only legislative history we have in the record, the purpose of the new bill for 226E was to provide clarity, not to change the law. And I think the district court erred in ignoring this clarification of the law and saying you needed some extraordinary kind of injury. All you need to do to prove penalties and damages for the employees is to show the violation and to show that it was knowingly, knowing and intentional. Injury is deemed to have occurred. Regardless of injury. A knowing violation is a, constitutes a compensable claim, regardless whether there's any injury. No, injury is deemed to have occurred under the statute, Your Honor. And it requires no... You're talking about the PAGA statute? No, under PAGA, you don't need any injury. Right. You don't need any knowing and intentional conduct. For damages for the employees under 226A, injury is deemed to have occurred by depriving the employee of the information to which they're entitled. What case says that injury is per se established if there is a violation of the statute? For PAGA purposes? No, no, no, no. You said that for injury under the statute. For injury under the statute, Your Honor, I direct your attention to a Sackler versus Kindred Health Care, which is 2013 Westlaw 812656, cited in our brief. What court is that? What's the site of that case? Is it from California? It's the Central District of California, Your Honor. So if we read that case, it says that if there is a violation shown, that injury is presumed or injury is established. Injury is deemed to have occurred because you have deprived the employees of the simple information to which they're entitled, and which as a result of this lawsuit, they now get on the revised wage statements. Did you cite that case in your brief? Yes, Your Honor. And what page is it on your brief? Well, that's the hardest question. Okay. Never mind. I'm sorry. It is in the index, I'm sure, is Sackler. S-E-C-K-L-E-R was the plaintiff. Mr. Harris, before there can be a violation of 226A, one has to also consider 226E and its sub-subsection 2C, which is if the employee can promptly and easily determine as a reasonable person to ascertain the information, then there's no violation. But your point is that there is evidence in the record that is Ms. Sackler cited in which the defendant admits that there cannot be determination of hourly rate and total hours worked on this statement because of the blended nature of hour regular pay, overtime, and float time. Yes. And also because, Your Honor, in getting total hours, you would add float overtime. You would logically assume it's hours worked. Because where it says total earnings, and it shows in my example, there are nine hours added by floating holiday and one hour added by vacation pay. And that 93 hours should be reduced by eight, should be 85 hours. Well, I don't have that specific one in front of me. But Your Honor, incredibly, we took this lady's deposition, an officer of the corporation up in Costco's headquarters in Washington, set up to be the rule 30B6 witness. This is the issue in the case. I said, what is meant by float overtime? And she said, you can't tell. You don't know. She had to make a call back to the office. We took the deposition of the payroll clerk at the Costco facility at issue. She didn't know what it meant. We took the deposition of the warehouse manager. She didn't know what it meant. And this is one of the issues in the case. And they didn't know. And so. But you agree that the fact that there is confusion about what vacation pay and holiday pay observed means doesn't necessarily mean that Ms. Apodaca got shorted as to her pay. Correct, Your Honor. The point is not, we're not arguing in this part of the case that she was shorted because of the wage statement. The legislator has stated you have to show the total hours worked, you have to show all applicable hourly rates so that employees can easily determine whether or not they've been paid correctly. And if you don't do that, the legislature has determined that a provision of a civil employer's information to which they're entitled. And so under the PAGA section, you're not required to show injury at all. You're not required to show knowing and intentional at all. Counsel, on that point, I did not see the Sackler case as you spelled it cited in your briefs at all. I didn't recall reading it and I don't see it in your index. But while you are preparing for rebuttal, perhaps you can point us to where it is in your brief. I'm sorry, Your Honor. Maybe I'm just looking at notes. Maybe it isn't in the brief. All right. I'm sorry. I'm not certain of that. OK, we'll hear from Costco and then you can elucidate that point on rebuttal. All right. Thank you, Counsel. Thank you, Your Honor. Good morning, Karen Selden on behalf of Costco. I'd like to first begin by addressing the judgment on plaintiff's individual wage statement claim and explain why, A, there was no violation of 226A and, B, there was no knowing and intentional violation, even assuming there had been one. And then I'd like to turn to the order denying certification on the wage statement claim. So I heard Mr. Harris concede that the vacation slash float overtime line itself does not violate Section 226. So the two provisions we're talking about are A2, which talks about total hours worked, and A9, which talks about rates of pay for those hours worked, for corresponding hours worked. So we know from the Morgan case that simply having to add up two lines, regular hours and overtime hours, to come up with a total hours worked number is not a violation of A2. That's explicit. But isn't it a violation because it's a blended rate, because you couldn't figure out how much you're being paid for vacation individually and how much you're being paid for float individually? So that is subsection A9, which talks about reporting all rates of pay and corresponding hours worked. So the A9, again, only regulates the reporting of hours worked. And the case that... Now, wait a minute. Let's get it straight. Yes. A2 rates, A9 total hours? Reversed. A2 is total hours worked and A9 is rates of pay. Okay. So the Morgan case talks about the legislative history of A9 and A2 and says A2 was enacted so that employees could see total hours worked. A9 was enacted in 2000 as a companion so that employees could see how those hours were broken down so that they could understand the rates of pay for those corresponding hours worked. So the Morgan case is clear and it says explicitly that the employers are now required to list both the total regular hours worked and the total overtime hours worked along with the corresponding hourly rates. And this makes it easier for employees to determine whether they were being paid for all hours worked at the appropriate rates of pay. Are you hanging your hat on the word worked? Hours worked, yes. And vacation... And so vacation time is not worked? Correct. Correct. As a matter of law and... As a matter of law? Let's explain that to me. Vacation time by definition is not working time. It is compensable time. It is time for which you are paid, but it is not hours worked. So you don't think that the intention of the statute was to be able to tell both hours worked and vacation time? No. What the statute says is it makes a distinction between hours worked in A2 and A9 and total earnings. So yes, Costco, and there's no dispute here, Costco did list all of the earnings, which is why there are these line items for floating holiday and for vacation pay. So they have to be on the wait statement, but there is no requirement for them to list the rates of pay for those hours. A9 under the Morgan case is exclusively about breaking out your hours and the corresponding rates of pay only for hours worked. And because there's no dispute in this case that these lines are exclusively about vacation. And then when you get down to the total, what's the total supposed to tell you? The total is supposed to tell you total earnings, and that's what the dollar amount is, is the total earnings. And then if you go further down, another part of A9 says you have to know net earnings. But the total earnings include sums for the floating holiday salary employee and also a sum for vacation pay. Correct. And that's not a violation because the labor code says you have to list total earnings. And so that's compliant with that. And the Morgan case says to find hours worked. Do you agree with Mr. Harris that if she had left employment or died, the accrued floating holiday and vacation pay would have to be paid to her at termination of her employment or to her personal representative in case she died? Yes, we do agree with that. Okay. Yes. But again, the point is you have to look at what the statute requires specifically. And the hours worked number can be done with simple math. That's the Price case and that's the Morgan case. And so to go beyond that and to say, well, maybe some people are potentially confused by various entries on the wage statement, you would be turning a wage statement into an employee handbook or a policy manual just on the off chance that somebody might be confused by some sort of cryptic entry on there. But 226A doesn't say you have to forestall and anticipate every way in which an employee might be confused. It lists nine specific pieces of information that need to be on the statement. And in fact, the Morgan case in footnote eight, the employee had objected that there were two somewhat cryptic sounding entries that were on there that were other TY was the name of one and account or shore. And the employee objected that these are not on the exemplar wage statements on the state agency's website. This shouldn't be on there. And the district court, I'm sorry, the court of appeal rejected that argument and said the plaintiff did not offer any evidence to support her assertion that these other categories contain any information about hours actually worked because they were not hours worked. It was not a violation. How about the knowing and intentional argument? Yes. So, uh, as, uh, your honor judging, you acknowledge there are two competing lines of cases at the federal district court on how to articulate the knowing and intentional standard. There's the good faith standard that, uh, the district court adopted that Costco had advocated. And then there is a standard that plaintiff advocates. And I think under either one, the answer is the same, that there was no knowing and intentional violation. The Wilner case, which is the case that, uh, Mr. Harris, I think, and the second case as well that, uh, he's relying on. And the standard there was that the employer knows the facts that bring its actions within the purview of section 226. So Wilner, it was that the employer had not listed the start date of the pay period and had not listed, uh, uh, another piece of information that explicitly is required by 226. And the court said, you don't need to go on and show that the employer intentionally violated it. You don't need to show that the employer, um, knew and did it anyway. You just need to show that they knew these facts. But in this case, where you're talking about a line item that relates to non-hours worked, there was no information that Costco had that would alert it that it's reporting of non-hours worked led it to violate a statute that exclusively discusses hours worked. And there has never been a case reported or unreported state or federal that says that reporting of non-hours worked comes within A2 or A9. So under either standard, uh, we, the district court's findings of fact have to be affirmed. And those finding of facts are very detailed. Um, if you look at the court's order, it specifically pointed out that plaintiff herself never, uh, alerted Costco that, uh, she was confused by this line item. In fact, the court said there was no evidence that anybody had told Costco that this line item was causing confusion. Um, and in addition, these other lawsuits that Mr. Harris is alluding to, the district court specifically found those did not put Costco on notice because neither of them involved this float over time entry that was never even mentioned. So none of the, the, the, the facts in the record, uh, led the court to conclude there was a knowing intentional violation and it was not clear error. So there's no basis for the court to, to reverse that as a factual finding. Um, I'd like to then also, unless the court has further questions. Are you claiming that, um, some sort of notice has to be given to Costco that their weight statements do not comply before Costco can be held to knowingly and intentionally print the statements in this somewhat unique case? Yes. If this were a case where Costco had left off information that is clearly listed on two, two, six, a, if it had forgotten to put its full name on there or its address or the earning states, then I don't think that issue would arise, but because we're talking about a novel legal theory and, and, uh, a line item that is not governed at least on its face by two, two, six, a, then I think the absence of notice, the absence of knowledge that this line was causing confusion and would potentially, uh, put it at risk of violation of two, two, six, a is rather... But whether it causes confusion or not doesn't determine whether the statute has been complied with. Confusion is not a necessary element for the violation, is it? Uh, confusion is not, but, uh, the, the state of mind of the person with the statute itself is that it has to be knowing and intentional. And so even in the cases that, uh, uh, Mr. Harrison... But knowing and intentional has to do with the act by the employer of printing the wage statement accurately. Yes. And the, the way statement is accurate. There is no contention that there has been a misreporting of time on here or that, uh, there has been that the hours listed are wrong in any way. The contention is you should have, uh, done something, you should have either named this float over timeline something different, or you should have broken it out in a certain way, but these are non-working hours. And so this... That's your point. Yes. It's a novel... The statute only requires that there be accurate hourly rates and accurate total hours reported as to hours worked, not as to hours credited as a, as a benefit. Correct. And for knowing intentional to, to, to expect an employer to anticipate a novel, novel legal theory in a lawsuit, and then to go back and say, therefore it's knowing and intentional because they did not anticipate this theory, I think puts too high a burden on employers. Um, so that if I may, I'll, I'll, unless, um, Judge Ronson, I believe you had a question as well. Well, I was going to ask you along the same lines, what your definition of injury is, because opposing counsel seem to take the position that injury is deemed, um, to have been suffered when there is a violation of the statute. And I was curious whether you agree with that representation. I don't in this context. And that actually does, uh, tie into the, the class certification order because there, the court said specifically that plaintiff had not, uh, shown that she could prove class-wide injury on a common basis. What about individual injury? Uh, individual injury too. So both under the 2013 amendment and in the pre-2013 cases like Price and Morgan, which I've discussed, the standard is, and I think Judge Mayhew had mentioned it before, can the employee readily determine from the four  hours worked? A and nine, correct. And so this is not a case where there's information missing. This is a case where plaintiff's theory is that there's too much information. There's extra information that caused me to be confused. So it might be the case that in a missing information case, you could deem injury class-wide because clearly nobody could tell from the four corners of the wage statement what the employer's address is or what the hours are if they were missing, but that's not this case. In a case where there's too much information on the web, on the, um, on the wage statement, it still remains a relevant inquiry. How did each individual, how did each class member interpret this wage statement? Were they confused? Confusion is the injury here. So when you've got information, too much information, you can't just assume that everybody's going to be confused, particularly in this case where the only, uh, evidence that plaintiff gave of confusion, um, in with her classroom papers was her own declaration, which attached one way. Would you concede that if plaintiff, uh, were confused, that would be sufficient injury for her individual case? No, because the standard is whether a reasonable person would be confused. And our position is that, uh, with the regular pay listed and the overtime pay listed, it was not reasonable for her to then, and she had also testified that she understood how Costco paid for vacation time, eight hours at the regular rate and one hour at the overtime rate. And she knew that the word float referred to extra time that Costco gave. So we would, um, have this been litigated, uh, have taken the position that was not, her personal confusion would not have been reasonable. But certainly if you're going to litigate that person by person in a thousand plus class action, I think the district court was well within its discretion to say that the injury would be an overwhelming inquiry in the case and certainly can't be presumed. Uh, and I do know that the class cert, uh, order, the district court did say that under both the 2013 statute and the, uh, um, excuse me, the 20, the pre-2013 cases, the result would be the same. Um, and finally, just on the, the PGA, uh, claim that, uh, Mr. Harris mentioned, I just wanted to make clear that, uh, Ms. Apodaca has only brought this claim on behalf of herself. I heard Mr. Harris talk about other Costco employees. She had originally bought this claim only on behalf of herself and did not seek leave timely to amend. And on the eve of trial, she attempted to amend and the district court denied her leave and he has, Mr. Ms. Apodaca has not appealed that ruling. So we're talking about a single person PGA claim. And in fact, uh, the California court of appeal in the Reyes v. Macy's case, which Costco, I'm sorry, Ms. Apodaca cites in her brief that rejected the idea that an individual employee can bring a PGA claim only for herself. What case is that you say? Uh, the Reyes v. Macy's case, Your Honor. Um, it is, uh, 202 Calat 4th, 1119. It's a 2011 case and it's at plaintiff's brief, page 33 at note seven. There's also another case to the same effect. It's the Brown case. You said it's in the plaintiff's brief? Yes. Yes, Your Honor. Um, and so, so the PGA claim fails not only because you can't bring it on behalf of yourself, but there is no predicate violation of 226A. I'm sorry. You can't bring it because first? Uh, on an individual, just on behalf of yourself. The idea with a PGA claim is you're bringing it on behalf as a representative action on behalf of many similarly situated employees. You, so this case says that you can't just bring one for yourself. If you were to prevail on the PGA claim, is there a possibility of attorney's fees? Uh, I don't know that, Your Honor. Uh, I can certainly look it up or perhaps Mr. Harris can answer the question for you. Your second reason is that the underlying, the failure of the underlying claims precludes relief under PAGA. Correct. And I would also, uh, point out that a plaintiff below, um, had said that she was not seeking the default penalties under PAGA, even for herself, the penalties under 2699 subsection F. She has disclaimed those penalties. Um, where was that? Uh, that was in her opposition to her summary judgment motion. That's at excerpts of record, uh, 3083 footnote three, says plaintiff does not seek section 2699 F penalties on account of the violations of section 26, 226. And lastly, there are cases, uh, district court cases that, uh, uh, disagree with the notion that you don't need to show, uh, injury, uh, and knowing an intentional violation that simply because it's a PAGA action doesn't dispense with that essential element of the claim. All right. Thank you, counsel. Thank you very much. Rebuttal. We'll give you, okay. We'll give you a minute. The complaint to address the last point at paragraph, uh, 121, the first amended complaint, volume 15 ER4008 states that the civil penalties are to be distributed as follows, 75% to the LWDA and 25% to the aggrieved employees. Under this court's decision recently in Bauman and Chase investment, uh, PAGA plaintiffs are private attorneys general who step into the shoes of the LWDA. The only reason the court below said that she brought the case on her own behalf is because in the title to the cause of action, it says, uh, instead of on behalf of the class, which it is not, PAGA is not a class action claim. It says on behalf of APADACA because she steps in the shoes of the LWDA. Well, what's your response to opposing counsel's observation that the plaintiff disclaimed any PAGA remedies in her opposition? Well, that's a complete misreading. I, I, I have no idea what I'm, I'm not sure what that, what she's referring to your honor, but she certainly did not disclaim, uh, her PAGA, uh, claim that that makes no sense, but I don't, uh, ER 3083 note three, the defense is correct. That plaintiff does not seek section 2699 F penalties on account of the violations of sections 2, 2, 6, a and 1174. What, what was meant by that then? I think the penalties come from a different section. I don't have that in mind. I think they misquoted the section that we were referring to. The body was talking, the text was talking about PAGA claims. Yes, but, but there, there are different penalties, there are different areas where the penalties accrue. Uh, there's, there's, uh, uh, some violations have their own penalties, other sections have other penalties, but she certainly did not intend to disclaim her violation. And if we could refer, there was also a great discussion about the Morgan case and what the Morgan case actually states. And I'm quoting from page 1145 of Morgan versus United Retail, the obligation to list the total hours worked during the pay period can only be satisfied by listing the precise actual number of hours worked. The reason is designed to provide the employee with a record of hours worked. They, the problem here is she said, well, if they didn't put their address, maybe that would be a violation. This is a similar kind of violation. They put float over time and you look at something that's described as float over time and the average... But her point is that it's not worked. Float over time is not worked. Yes, but, but you don't know that from the wage statement alone. But you know how many hours it's, the number of hours worked is at a different place on the wage statement. The number of regular hours worked is at one place. The number of overtime hours worked is at one place. The number of Sunday hours worked is at one place and the number of float over time hours is at one place. So all the hours worked are in fact on the statement. Yes, but, but if you were trying to determine what hours did you work and you saw a description float over time, that would logically... It doesn't say worked though. Well, the word overtime connotes work and it is ambiguous. They, the council says, you know, this would be too complicated for an employer to do, but they've admitted they've fixed the wage statements and they now do it and under Morgan, you have to list the total hours worked and they don't do it here. They list the total hours paid and the court found... They list all the hours worked and then some more hours that were not worked. Yes. In other words, to take Ms. Selden's point, they gave too much information, not, not enough information. Well, they, they gave, they gave plenty. They gave some information. No, they gave all the information they had to, and then some. Well, they gave some, some additional information, but they never give the employee from the wage statement alone, the total hours worked unless the employee knows that float over time doesn't mean hours worked and Ms. Selden, the 36 witness didn't know it. Her office, the manager of the Costco didn't know it and the payroll clerk didn't know it. So, so council, did you, were you able to gather your citation to Seckler? Yes, ma'am. Yes, Your Honor. That, that is in the reply brief at page 14 and 15. And so what language are you relying on? Because when I looked at Seckler, it said that even the, it said that the injury requirement is minimal, right? And that employee is deemed to suffer injury. I'm at page star 12. If the employer fails to provide accurate and complete information as required, and if the employee cannot promptly and easily determine from the wage statement. So it's not just the fact that there is a misstatement, the employee has to be unable to calculate, right? You would agree. And the point here, Your Honor, is the employee cannot promptly and easily determine from the wage statement alone that total hours worked. The employee looks at float overtime and doesn't have any idea what that means. And the Senate bill analysis follows the language there stating that it's not new law, it is simply meant to clarify the issue. And so it, it seems clear to me that, and, and the court below found that there were these violations in her findings of fact, the district court found that 226A was violated, but the error was in imposing a requirement for knowing an intentional violation in damages for PAGA and imposing a requirement that, for which there is no evidence of a good faith belief. There's no evidence of that at all. If we agree with you that the court below found there was a violation, but we disagree that there was a violation, we can still affirm. Well, I think, I don't frankly understand how, I haven't, that's one I haven't thought of. Well, think about it. But I'll, I'll be thinking about that for the rest of the day because, because I don't see how these wage statements can possibly make the standard that the employee can readily and easily determine the number of total number of hours worked when he has regular hours, overtime hours, Sunday hours, and float overtime hours on the wage statement. And the head of the head of the payroll department, a corporate officer who's prepared to testify in the issue says, I don't know what it means. Her, the manager of the Costco doesn't know what it means. And the payroll clerk doesn't know. I'm curious how you cited the Sackler case in your reply brief and it's not in your index. Your Honor, I'm afraid I don't know how those automatic indexing things work. Somebody else in the office did it. I apologize for that. I think it, maybe it picks up the F sup and F second. And it's probably a problem with string sites. That's one of my pet peeves. And so there were, that was in with a number of string sites and it may not have, it may have just taken the first case and not the following cases. All I know is the greatest invention of my lifetime was the automatic thing doing the table of cases. Okay. Thank you, counsel. Thank you. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: Rawlinson, Bea, Eaton